# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-01236-SCT

*LILLIE STEWART*

*v.*

*SOUTHEAST FOODS, INC. D/B/A SUNFLOWER FOODS STORES*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/92 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM A. LANIGAN III |
| | GEORGE F. HOLLOWELL JR. |
| | ERIC CHARLES HAWKINS |
| ATTORNEY FOR APPELLEE: | BRADFORD L. HENRY |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 12/5/96 |
| MOTION FOR REHEARING FILED: | 12/19/96 |
| MANDATE ISSUED: | 3/20/97 |

**BEFORE PRATHER, P.J., SMITH AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE CASE

¶1. On August 24, 1991, Lillie Stewart ("Stewart") was arrested and charged with assault and battery by Leroy Wiley ("Wiley"), a store security guard for Southeast Foods, Inc. ("Southeast"). Municipal Court Judge Earl Solomon, Jr., dismissed all charges against Stewart on September 20, 1991, and Stewart subsequently filed a suit for malicious prosecution against Southeast in the Circuit Court of Washington County. On September 4, 1992, Southeast submitted, in support of a summary judgment motion, an affidavit executed by Judge Solomon in which Solomon stated that he had actually considered Stewart to be guilty of the crime in question but had dismissed the charges in order to be lenient. Circuit Judge Gray Evans overruled the objections to the affidavit, and he granted Southeast's

motion for summary judgment based in part upon the affidavit of Judge Solomon. Stewart timely appealed from said judgment and assigns the following issues:

### ISSUES

**I. WHETHER THE CIRCUIT JUDGE WAS IN ERROR WHEN HE GRANTED THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED IN PART ON THE AFFIDAVIT OF MUNICIPAL JUDGE SOLOMON.**

**II. WHETHER THE ISSUE OF WHETHER WILEY ACTED WITH MALICE IN FILING CHARGES AGAINST STEWART SHOULD HAVE BEEN SUBMITTED TO THE JURY RATHER THAN BEING RULED UPON BY JUDGE EVANS IN HIS SUMMARY JUDGMENT RULING.**

### II. STATEMENT OF THE FACTS

¶2. The present case involves an incident in which Leroy Wiley, an employee of Sunflower Food Store, detained Lillie Stewart, Appellant herein, and several acquaintances on suspicion of shoplifting. Wiley led the suspected shoplifters to the back of the store, whereupon Stewart and Wiley became involved in the physical altercation which gave rise to the present lawsuit. It is the contention of Stewart that Wiley provoked the altercation by poking Stewart in the chest, while the appellees claim that Stewart assaulted Wiley without provocation. At any rate, it is undisputed that Wiley placed Stewart in handcuffs following the altercation and filed charges against Stewart for assault and battery.

¶3. About a month later, on September 20, 1991, Washington County Municipal Court Judge Earl Solomon, Jr. tried Stewart on the charges of assault and battery. According to an affidavit executed several months later, Judge Solomon felt that Stewart was guilty of the crime in question, but he nevertheless decided to dismiss the charges, given that Stewart had no criminal record and had shown remorse over her actions.

¶4. On October 30, 1991, Stewart filed suit against Wiley's employer, Southeast, for malicious prosecution. Following discovery, Circuit Court Judge Evans granted Southeast's motion for summary judgment, based in part upon the aforementioned affidavit of Judge Solomon. Stewart had objected to the admission of the affidavit on a number of grounds, including the grounds that a judge is not allowed to impeach his verdict after the fact, as well as on the grounds that the affidavit constituted improper hearsay and opinion evidence. In addition, Stewart contends that Judge Evans was incorrect in ruling that Stewart had presented no evidence that the charges against her were filed with malice, and that this issue should have been presented to a jury.

**I. WAS THE CIRCUIT COURT IN ERROR WHEN IT GRANTED SOUTHEAST FOOD'S MOTION FOR SUMMARY JUDGMENT BASED IN PART UPON THE AFFIDAVIT OF JUDGE SOLOMON?**

**A. Is the affidavit hearsay ?**

¶5. Stewart objects that the affidavit constitutes impermissible hearsay evidence which should have

been excluded on this basis. Clearly, most, if not all, affidavits are hearsay, but they are nevertheless properly considered on summary judgment motions as long as they are based on personal knowledge and set forth facts such as would be admissible in evidence.[1] M.R.C.P. 56(e). The hearsay objection would be valid if there were hearsay statements within the affidavit itself, but the affidavit in question contains no "out of court statements offered to prove the truth of the matter asserted." The affidavit merely contains the factual statements of Judge Solomon regarding his true intentions and state of mind in dismissing the charges against Stewart. Stewart makes a special objection to paragraph four of the affidavit on grounds of hearsay, but a reading of this paragraph reveals only the observations of Judge Solomon regarding his dismissal of charges against Stewart. To wit:

> I tried Lillie Stewart on the charge of assault and battery on September 20, 1991 in Municipal Court for the city of Greenville, Mississippi. I, sitting as trier of fact, dismissed the charges against Lillie Stewart. In my judgment, Lillie Stewart was actually guilty on the charge of assault and battery but, I was trying to give her a break by not convicting her due to the fact that she was too emotionally involved and I did not want her to have a criminal record as a result of this incident.

If an affiant's personal observations and recollections in an affidavit were considered to be inadmissible, then no affidavits could be used by judges in summary judgment ruling. The hearsay objection is without merit and was properly overruled by the trial judge.

### B. Whether Judge Earl Solomon should have been allowed to testify to impeach a verdict he rendered.

¶6. Stewart asserts that Judge Solomon's affidavit should not have been considered by Judge Evans in the subsequent civil trial because M.R.E. 606(b), "Competency of Juror as Witness", does not allow a jury to impeach its verdict. Stewart argues that this rule should be extended to a judge such as Solomon, where he was serving as the trier of fact in a trial proceeding. Stewart makes note of cases interpreting Rule 606(b) such as *Ratliff v. Nail*, 231 So.2d 798 (Miss. 1970) , which do in fact prohibit a *juror* from testifying to impeach a verdict which they rendered. Stewart then asserts in her brief that "clearly Rule 606(b) is not limited to the jury but extends to all triers of fact; judges; juries and arbiters." This assertion by Stewart is without basis. A reading of Rule 606(b) indicates that the Rule prohibits a "juror" from testifying during an "inquiry into the validity of a verdict or indictment."

¶7. Had the drafters of the rule wanted to use broader language such as "trier of fact," they could have easily done so. Furthermore, M.R.E. 605, "Competency of Judge as Witness" merely states that the "judge presiding at the trial may not testify in *that trial* (emphasis added) as a witness. No objection need be made to preserve the point." Rule 605 is the counterpart of Rule 606 applicable to the competency of judges, and Rule 605 is almost identical to Rule 606(a) in that said provisions forbid judges and jurors from testifying at the trial in which the judge or jurors are presently serving. Very conspicuous in its absence, however, is any language in Rule 605 which forbids a judge from testifying in a subsequent inquiry into the verdict, as is the case with jurors in Rule 606(b). Given the absence of such a provision, it can be inferred that the drafters of said rule understood that there were certain extraordinary situations in which a judge may be called upon to explain his verdict or rulings in a subsequent proceeding.

¶8. In *Kitchens v. State*, 179 So.2d 13 (Miss. 1965), this Court allowed the testimony of a county

court judge in a subsequent inquiry into a verdict of not guilty which he had entered by rubber-stamping a discharge of the defendant. The judge testified that he had mistakenly entered the "not guilty" verdict and that "he entered the rubber stamp order on the record simply to get the case off his docket." *Kitchens*, 179 So.2d at 14. This Court allowed the testimony of the judge and affirmed the conviction of the defendant in question in spite of the Judge's accidental discharge of the defendant. *Id.* at 15.

¶9. Thus, there is clearly authority permitting a judge to testify as to the true nature of his verdict. This Court held in *Page v. Wiggins*, 595 So.2d 1291 (Miss. 1992) that a municipal judge could not establish a record of testimony by affidavit, but the statutory prohibition against a municipal court being a court of record is limited to records of testimony. *See: Page*, 595 So.2d at 1295; §21-23-7. Stewart argued before the trial court that the municipal court was not a court of record, and that the docket transcript with the "dismissal" written on it should serve as the sole record of the case. This appears to be a valid argument, but it naturally follows that a municipal judge who has statutory authority to issue a written judgment should have the authority to clarify said judgment when the meaning of said judgment is subject to dispute. Accordingly, this point of error is without merit.

### C. Whether the affidavit of Greenville, Mississippi Municipal Judge Earl Solomon was competent testimony upon which to grant the defendant's summary judgment motion.

¶10. Stewart next contends that the affidavit of Judge Solomon constitutes impermissible opinion evidence which sets forth a legal conclusion that Stewart is guilty of the crime. Stewart asserts that the admission into evidence of the affidavit was improper because, in the affidavit, Judge Solomon merely asserts his opinion that Stewart is guilty of the crime in question rather than providing information as to the facts of the case. Stewart further asserts that this testimony sets forth an impermissible legal conclusion regarding the guilt of Stewart.

¶11. Mississippi Rules of Evidence 56(e), dealing with the use of affidavit testimony in summary judgment motions, provides in part that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible into evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.

¶12. Stewart notes correctly that Judge Solomon is not competent to testify through an affidavit as to the events that occurred in the altercation in question between Stewart and Wiley given that he did not have personal knowledge of said events. However, as the trier of fact in the criminal case, Judge Solomon clearly had the authority and duty to reach a legal conclusion or opinion as to Stewart's guilt or innocence. Furthermore, it was a necessary predicate to the wrongful prosecution lawsuit that Judge Solomon reach a decision or opinion in Stewart's favor such that the criminal proceedings might properly be considered to have "terminated in Stewart's favor" as defined under applicable wrongful prosecution authority. Judge Solomon dismissed the charges against Stewart, and, as will be seen, a dismissal may or may not constitute a favorable termination of criminal proceedings such as to permit a defendant to maintain a wrongful prosecution cause of action.

¶13. It should be noted that the circuit judge was in error in considering the affidavit with regard to the issues relating to probable cause, given that the role of the trier of fact in a criminal case relates

solely to the issuance of the criminal verdict. The sole relevancy of Judge Solomon's opinion regarding the guilt or innocence of the defendant is with regard to the issue of whether the criminal proceedings terminated in favor of the defendant. It naturally follows, however, that the issue of whether the dismissal constitutes a termination of the proceedings in favor of the defendant is very much relevant in the subsequent malicious prosecution proceedings, and it is in this context that the affidavit could and should have been considered by the circuit court in the subsequent civil trial.

¶14. The relevance of Judge Solomon's affidavit with regard to the issue of whether the proceedings terminated in favor of Stewart arises from the fact that the law of malicious prosecution generally does not consider dismissals on grounds of mercy or leniency to constitute terminations of criminal proceedings entitling a defendant to maintain a malicious prosecution cause of action. If a prosecutor had dismissed the charges out of leniency or mercy, as Judge Solomon did, then the Restatement Second of Torts would not consider such a dismissal to have been a favorable termination of the proceedings entitling Stewart to file a malicious prosecution cause of action. Restatement Second of Torts § 660 provides that:

> A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if:

> (a) the charge is withdrawn of the prosecution abandoned pursuant to an agreement or compromise with the accused; or

> (b) the charge is withdrawn or the prosecution abandoned because of misconduct on the part of the accused or in his behalf for the purpose of preventing a proper trial; or

> *(c) the charge is withdrawn or the proceeding abandoned out of mercy requested or accepted by the accused. . . .* (emphasis added).

¶15. There are apparently no Mississippi cases which have considered the issue of whether a dismissal by a prosecutor based on considerations of mercy or leniency constitutes a termination in favor of the accused, but the logic behind the view set forth in the Restatement is obvious. A dismissal of minor charges based solely on considerations of mercy, in spite of a belief that the accused is guilty, should not force the private prosecutor to pay the price for a third person's exercise of leniency.[(2)]

¶16. The aforementioned Restatement provision is not precisely on point in the present case, given that Judge Solomon, rather than a prosecutor, dismissed the charges. From the perspective of Southeast, however, the policy considerations behind said Restatement provision are very much applicable. The comment to clause (c) provides that:

> A charge is not withdrawn as an act of mercy if the accuser has come to believe that the accused is innocent. Mercy implies a belief in the guilt of the accused or at least in the possibility that he may be guilty. Hence a *nolle prosequi* entered under these circumstances is not a sufficient termination in favor of the accused. A private prosecutor who initiates a criminal prosecution should not be penalized for an act of mercy, much less for a similar act performed by a public prosecutor over whose conduct he has no control.

The Restatment comments thus state that "a private prosecutor who initiates a criminal prosecution should not be penalized for an act of mercy", and the comments emphasize that the logic behind this statement applies even more when the act of mercy is done by a third party over whom the private prosecutor has no control. Southeast clearly had "no control" over the fact that Judge Solomon elected to dismiss the charges against Stewart on grounds of mercy. This Restatement analysis thus applies equally to a dismissal on grounds of leniency by Judge Solomon, given that the public policy considerations in the present case as they relate to Southeast are identical.

¶17. With regard to the affidavit, this Court does recognize that it would be preferable that the fact that a dismissal has been made on grounds of leniency be clearly stated in the record rather than testified to at a later date. As noted earlier, however, a municipal court is statutorily forbidden to make a record of testimony, and the docket form on which the record of the dismissal was scribbled (and which serves as the only record from the criminal case) had no space for a notation regarding the motivation for any judgment. Under these facts, it would be unrealistic for this Court to expect a notation regarding the motivation for the dismissal to have been made on the docket form.

¶18. Nevertheless, the policy considerations against forcing Southeast to defend against a suit based on a dismissal on grounds of leniency should apply equally to a dismissal made in municipal court. It is arguable that the policy provisions discussed earlier should apply even more forcefully to municipal court criminal cases, given that said courts generally handle offenses of a much more minor nature than those in county or circuit courts. The temptation to dismiss charges on grounds of leniency is clearly much greater in cases involving minor charges, and the inconvenience, pain, and expense of defending against the type of charges found in municipal court is generally much less than that faced by defendants in more serious criminal cases. In addition, the proceedings in municipal court are much less formal than those in county and circuit courts, and the chances of an anomalous result being reached are arguably greater.

¶19. It is clear that those courts of record which deal with more serious charges should be expected to produce a much more thorough record of the motivations for any dismissal. Accordingly, this Court's holding allowing the affidavit to be considered in the present case is limited to the facts of the present case, and does not apply to dismissals made in courts of record of this State, where a record of any merciful motivation for a dismissal should be made in the record of the case.

¶20. The fact that the Restatement Second of Torts refers to dismissals on grounds of leniency in the context of prosecutors illustrates that it is ordinarily the province and prerogative of a prosecutor rather than a trier of fact in a criminal case to dismiss charges on grounds of leniency in spite of a belief in the guilt of the accused.[3] Somewhat ironically, it is Stewart herself who argued before the circuit court that Judge Solomon overstepped his authority as the trier of fact and assumed a role of prosecutor at her criminal trial. Stewart argued before the circuit court that "if no prosecutor was present on September 20, 1991, then Judge Solomon performed dual roles, one as judge, the other as prosecutor. This is a blatant act in defiance of Article I, sections 1 and 2 of the Mississippi Constitution."

¶21. Stewart's argument begs the question: if Judge Solomon assumed an unconstitutional role during the trial in question, why should his ruling, whatever it is, be given any effect at all ? It is Judge Solomon's order of dismissal which gave rise to the present lawsuit, and said dismissal in spite of a

professed belief in Stewart's guilt is the very sort of prosecutorial act which Stewart asserts Judge Solomon has no authority to perform. It is clear that it is Southeast rather than Stewart who suffered as a result of Judge Solomon's actions on September 20, 1991, and it is thus Southeast who should have the greater objection to the dismissal of charges by Judge Solomon.[(4)]

¶22. The issue of whether or not Judge Solomon had the constitutional and/or statutory authority to dismiss the charges against Stewart on grounds of leniency or mercy is not cited as a point of error before this Court, and we make no holding in this regard. This Court does point out the unconventional nature of the criminal proceedings below, which take the facts of the present case outside of the typical fact patterns involving dismissals on grounds of mercy by prosecutors. Southeast should not be punished for the irregular nature of the proceedings below, and if, as Stewart argued below, Judge Solomon acted unconstitutionally in assuming the role of prosecutor, then his dismissal should not be permitted to serve as a basis for a subsequent wrongful prosecution lawsuit. This Court wrote in *State v. Turner*, 319 So.2d 233, 235 (Miss. 1975) that:

> We would point out that actions for malicious prosecution are regarded by law with jealousy and they ought not to be favored but managed with great caution. Their tendency is to discourage prosecution for crime as they expose the prosecutor to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecution when, if they fail, they may be subjected to the expenses of litigation even though they are not found liable for damages. . . . (A)ll proper guard and protection should be drawn around those who, in obedience to the mandates of duty, may be compelled to originate, carry on, aid or assist in a criminal prosecution which may from any cause terminate in favor of the accused.

This Court thus stated in *Turner* that wrongful prosecution actions are disfavored and that "all proper guard and protection" should be drawn around those who in good faith initiate criminal proceedings. If these words are to mean anything, then they must be given effect in cases such as the present one, where the lawsuit in question results only from the leniency of a municipal judge and where there is no indication that the proceedings were instituted by Southeast for any improper purpose. Should Southeast be punished for a judicial act of mercy over which it had absolutely no control ?

### III. CONCLUSION

¶23. Stewart should not be permitted to attempt to convert Judge Solomon's leniency into personal financial gain, nor should Southeast be punished for the fact that the criminal justice system functioned irregularly in the present case. It would be a miscarriage of justice to allow Stewart to not only escape judicial punishment for her actions, but to also attempt to gain financially from the filing of charges against her. This Court concludes that, even assuming that Judge Solomon had the authority to issue a dismissal on grounds of mercy in the present case, the policy considerations set forth in the Restatement Second of Torts are such that said dismissal should not and does not constitute a favorable termination of the criminal proceedings entitling Stewart to bring a malicious prosecution cause of action.

¶24. This conclusion is based in part upon the fact that the dismissal was made by a third party over whom Southeast had no control and is not necessarily applicable to cases in which a private prosecutor initiates charges and later dismisses said charges (as opposed to a public prosecutor

dismissing said charges on his own initiative) on allegedly merciful grounds. The circuit judge improperly considered Judge Solomon's affidavit with regard to the issues of probable cause and/or malice, but, in the view of this Court, the affidavit constitutes relevant and admissible evidence with regard to the issue of whether the Municipal Court criminal proceedings terminated in Stewart's favor. Having so held, it is unnecessary for this Court to consider whether the circuit judge properly granted summary judgment on the issue of malice. Accordingly, judgment is affirmed.

¶25. **JUDGMENT IS AFFIRMED.**

**PITTMAN, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, DISSENTING:

¶26. I am compelled to dissent because, in my view, the majority, in relying upon the testimony of the trial judge in the criminal proceedings, gives effect to rank hearsay or opinion in preference to the official actions of a duly constituted court. The question whether a crime was committed and whether the accused committed the crime is not one addressed to third party opinion in our jurisprudence but rather to finders of fact. The majority opts to go with the opinion of a stranger to the litigation. This is wrong and I shall endeavor to explain why.

I.

¶27. The majority begins by considering whether the affidavit from the judge was admissible, that is, whether the judge had admissible testimony. The majority reasons that because our rules prevent jurors from impeaching their verdict, and not judges from impeaching their judgments, it must follow that such testimony is admissible. There are two reasons why this is wrong in the present context.

¶28. First, the judge's testimony does not and cannot remove the judgment of acquittal. The fact remains that Stewart was acquitted, thus terminating the prosecution in her favor. That fact is the only prerequisite to a malicious prosecution which involves the criminal court. Everything else involves the defendant. That is, the remaining questions are whether the defendant instituted the action, whether the defendant had probable cause and whether the defendant acted with malice. *Bankston v. Pass Road Tire Ctr., Inc*., 611 So. 2d 998, 1004 (Miss. 1992); *Strong v. Nicholson*, 580 So. 2d 1288, 1293-94 (Miss. 1991). None of these have to do with whether the plaintiff was actually guilty. That is a fact which the defendant need not show nor the plaintiff disprove in a malicious prosecution case. *Bankston*, 611 So. 2d at 1006-07 (stating that "[t]o determine the existence of probable cause, courts look to (1) a subjective element--an *honest belief in the guilt* of the person accused, and (2) an objective element--reasonable grounds for such beliefs.") (emphasis added). It follows then that the criminal trial judge's opinion as to the plaintiff's guilt or innocence of the charge is irrelevant to any issue in controversy.

¶29. The second reason that the testimony is inadmissable on the question of guilt, even if that was at issue, is that it is in fact opinion testimony which is not based upon personal perception or specialized knowledge helpful to the trier of fact. By definition, the trial judge was not present during the altercation. His opinion as to Stewart's actions were, of necessity, formed based upon the testimony that he heard at the hearing. At best, then, it is a conclusion, based on evidence from which the jury is perfectly capable of drawing its own conclusion, leaving aside the fact that it is a conclusion which is not relevant. Affidavits relating relevant facts in support of summary judgment must be based upon personal knowledge. This affidavit relates no facts and it relates no opinion on facts in issue. To be sure, if Judge Solomon had relied upon his own opinion and rendered judgment accordingly, we would not have this litigation. The fact is, however, he did not. When he failed to rely upon his conclusion in resolving the dispute in his court, his conclusion ceased to have significance.

## II.

¶30. The majority also contends that the policy considerations set forth in the Restatement (Second) of Torts § 660 (1977) construe the dismissal granted by the lower court based on mercy as insufficient to support a malicious prosecution cause of action. The first answer to that contention is that this Court has never adopted this section of the restatement. Even if this section of the restatement was an acknowledged in our jurisprudence however, it could not be imposed to bar this action. The language of the restatement section states that a termination will not meet the requirements of a cause of action for malicious prosecution if ". . .(c) the charge is withdrawn or the proceeding abandoned out of mercy *requested* or *accepted* by the accused . . . ." Restatement (Second) of Torts § 660(c) (1977) (emphasis added). I find nothing in the record that suggests that Stewart either requested or accepted mercy or leniency from Judge Solomon. The judge does indicate that Stewart was remorseful for her participation in the altercation at the store but there is no evidence that a request for mercy was made by Stewart. Nor is there anything to suggest that Stewart knowingly accepted mercy from Judge Solomon or even knew that mercy was the basis for granting the dismissal.

## III.

¶31. The final issue in dispute addresses the question of whether a dismissal, as opposed to a verdict of not guilty, ordered at the end of the trial court proceeding was sufficient to support a malicious prosecution cause of action. According to the record in the trial court, there was a trial before Judge Solomon where evidence was presented after which all charges were dropped against Stewart. Thus, Stewart was put in jeopardy and there was a disposition on the merits that resulted in a dismissal. The majority concludes that this dismissal does not constitute a favorable termination of the criminal proceedings entitling Stewart to bring a malicious prosecution cause of action.

¶32. The fact that a case has been dismissed rather terminated by judgment of acquittal does not defeat the element of termination in plaintiff's favor. *Strong v. Nicholson*, 580 So. 2d 1288 (Miss. 1991); *Pugh v. Easterling*, 367 So. 2d 935 (Miss. 1979). In *Strong* the plaintiffs were jailed, booked, fingerprinted, photographed, and brought before a Justice Court Judge for a preliminary hearing. The charging parties did not appear at the hearing. The court promptly dismissed the criminal charge of grand larceny. Thereafter, the plaintiffs filed charges for malicious prosecution. This Court held that the prosecution had terminated in the plaintiffs favor. *Strong* at 1293. The same

proposition was announced in ***Graves v. Scott***, 51 S.E. 821 (Va. 1905), where Graves was charged with having procured goods and chattel under false pretenses. A warrant was issued, Graves was arrested and did appear before the trial court. However, the trial judge dismissed the charges after Scott refused to offer evidence at trial or even be sworn. ***Id***. at 821. In holding that Graves' dismissal was a termination is sufficient to support an action for malicious prosecution, the Virginia Supreme Court cited the following:

> If the examining magistrate finds that there is not sufficient cause to hold the accused to answer, and therefore discharges him, that prosecution is thereby ended; and the consideration that other prosecutions may be brought against the same person on the same charge, and that the grand jury, on its presentation to them, may find an indictment thereon, cannot prevent the action of the magistrate from having its effect as a termination of the prosecution before him, sufficient to support the civil action. ***Casebeer v. Drahoble***, 14 N.W. 397 (Neb. 1882).

¶33. These rulings reflect the rationale that a favorable termination should not be exclusively defined as an acquittal. "All that is necessary is that the particular proceeding complained of shall have been abandoned and the accused discharged . . . ." ***Brook v. Super Service, Inc., et al.,*** 183 So. 484 (Miss. 1938). "To require a trial of the action on the merits resulting in an acquittal would be to permit a prosecutor to do all the damage which a malicious prosecution can possibly effect, and then deny the accused the opportunity to vindicate himself by a trial, by having the proceeding quashed or dismissed . . . ." ***18 R.C.L. Malicious Prosecution § 12 (1929)***; ***Bankston v. Pass Road Tire Center, Inc***., 611 So. 2d 998 (Miss. 1992). Therefore, based on the extent of the criminal proceeding to which Stewart was subjected, the majority's contention that the dismissal granted in the case at bar is insufficient to sustain a malicious prosecution action is unacceptable. The record clearly indicates that the trial court dismissed all charges against Stewart, discharged her and terminated the proceedings. There is nothing relevant to the criminal proceeding to indicate that the dismissal was inconsistent with a termination in Stewart's favor.

¶34. For the foregoing reasons, no reliance whatever should be placed on the affidavit of Judge Solomon. The question before the Court is whether there was probable cause to prosecute Stewart. That question must be determined based upon the civil jury's view of the evidence, not Judge Solomon's. The Restatement (Second) of Torts § 660(c) (1977) is inapplicable to the case at bar because Stewart made no request for mercy, and made no willful acceptance of leniency. Therefore, I respectfully dissent.

**LEE, C.J., SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING**:

¶35. I join Justice Banks' dissent. As the facts have been presented, a trial was held in the municipal court; a judgment of dismissal later was entered. Since this was a judgment rendered, we should not give credence to an affidavit explaining why or how the judge arrived at his decision. We do not allow affidavits of jurors attacking their verdicts. A judge takes an oath to uphold the law, to be fair and to render his decisions in accordance with the evidence and the law. In effect, this judge has stated under oath that he violated that oath and the trust placed in him. For these reasons, as well as those stated by Justice Banks, I dissent from the majority's decision.

1. The affiant must also be competent to testify "in the matter stated therein", and the issue of Judge Solomon's competency to testify is dealt with later.

2. This Court has reached a holding identical to that in provision Rest. 2d 660 (a), to the effect that a dismissal reached as a result of a voluntary settlement or compromise does not constitute a termination in favor of the accused. ***Jones v. Donald, Co.,*** 102 So. 540, 137 Miss. 602 (Miss. 1925). This fact illustrates that, as under the Restatement, not all dismissals in this State constitute terminations in favor of the accused for purposes of malicious prosecution actions.

3. The Restatement provision also supports the admissibility of Judge Solomon's affidavit for the limited purpose of determining whether or not the criminal proceedings terminated in favor of Stewart. It would obviously be contradictory to have a rule of law which holds dismissals on grounds of mercy to not constitute terminations of criminal proceedings in favor of the defendant and yet not allow the admission of the evidence of the intent of the dismissing party into evidence.

4. In addition to the constitutional issues, it is questionable whether Judge Solomon had statutory authority to dismiss the charges in question. The provisions of Miss. Code Ann. §21-23-7 (1991) clearly set forth a number of lenient sentences which a municipal judge may impose in criminal cases, including fines, public service work, suspended sentences, and probation, among others, but nowhere in said statute is a municipal judge authorized to dismiss criminal charges on grounds of mercy or otherwise.